Benjamin B. Gaines v. Commissioner. B. B. Sigelbaum v. Commissioner. Milton Steinhardt v. Commissioner.
Gaines v. Commissioner
Docket Nos. 25371, 25400, 25441.
United States Tax Court
1953 Tax Ct. Memo LEXIS 265; 12 T.C.M. (CCH) 490; T.C.M. (RIA) 53157; May 4, 1953
*265 The petitioners were stockholders in a corporation owning a hotel. The corporation transferred the hotel to Lester Holding Co. owned by most of the same stockholders. Lester sold the hotel at a gain in May 1943. Petitioner Sigelbaum concedes liability as a transferee of assets of Lester. Petitioner Gaines sold his interest in March 1943. Held, Gaines is not a transferee of assets of Lester. Petitioner Steinhardt contends that he was not a stockholder and received no assets of Lester. Held, Steinhardt was a transferee of assets of Lester. Frank Steinberg, Esq., 235 Lincoln Road, Miami Beach, Fla., Sidney Wasserman, C.P.A., Abe Schonfeld, Esq., 420 Lincoln Road, Miami Beach, Fla., and Mac Mermell, Esq., for the petitioners. Thomas C. Cravens, Jr., Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent asserts against the three petitioners, as transferees of assets, deficiencies in taxes assessed against Lester Holding Company, a corporation, for the taxable period January 1 to May 26, 1943. In corporation income tax the deficiency is $8,436.36, plus a 25 per cent delinquency penalty of $2,109.09. In declared *266 value excess profits tax the deficiency is $3,720, plus a penalty of $930. The respondent concedes an error in the inclusion of $14,850 in the selling price of a hotel. The resulting decrease in the deficiencies will be adjusted under Rule 50 where applicable. The corporation filed an income and declared value excess profits tax return with the collector of internal revenue at Jacksonville, Florida, for the taxable period January 1 to May 26, 1943. Findings of Fact Lester Holding Company, hereinafter referred to as Lester, was incorporated under the laws of Florida on July 29, 1941, and was dissolved by proclamation of the Governor of Florida in 1946. From July 29, 1941, until May 21, 1943, Lester was the owner of the Georgian Hotel, Miami Beach, Florida, hereinafter referred to as the Hotel. The petitioner Steinhardt was engaged in real estate brokerage in Miami and in construction work. The petitioner Sigelbaum for many years was in business as a wholesale electrical supply distributor in Miami under the name of Southern Lighting Supplies. The petitioner Gaines was owner of the Dempsey-Vanderbilt Hotel in Miami. In 1940 Steinhardt desired to build a hotel on a lot owned by *267 Malone Properties. He interested the petitioner Sigelbaum in the project and together they approached the petitioner Benjamin Gaines. Sigelbaum was to raise $10,000 and Gaines $40,000, through some associates, and about $100,000 was to be procured upon a first mortgage to the First Federal Savings & Loan Association. The Malone Properties agreed to take a second mortgage for the lot and Steinhardt's own construction company built the hotel. A corporation, Steinhardt Properties, Inc., was formed to hold title. Steinhardt was president of Steinhardt Properties, Inc., Jack Feuer, an accountant in the employ of Gaines, was secretary, and the stockholders and their percentages of interest were: Steinhardt and Sigelbaum, 33 per cent together equally; Gaines, 18 1/2 per cent; Bernice and Sadie Gaines, sister-in-law and niece of the petitioner Gaines, 18 1/2 per cent; and Gaines' associates in Boston, 30 per cent. The Hotel was leased to Hiram S. Robinson, or a corporation owned by him, from August 1940 until 1951. Some time prior to July 29, 1941, Sigelbaum, on behalf of himself and Steinhardt, bought the interest of Bernice and Sadie Gaines. Lester was then organized to take title *268 to the Hotel by transfer from Steinhardt Properties, Inc. Sigelbaum was president, Feuer was secretary, and Gaines was treasurer of Lester. These three were the directors. The stockholders and their percentages of interest were: Sigelbaum and Steinhardt, 51 1/2 per cent together; Gaines 18 1/2 per cent; and Gaines' associates in Boston, 30 per cent. In the closing statement of the sale from Steinhardt Properties to Lester, the sales price of the Hotel is stated as $260,000. Credit is given for the first mortgage with interest $109,508.52, second mortgage with interest $72,044, balance due on furniture $23,784.92, deposit on lease $42,500, and other items. A net cash payment of $13,673.85 was provided for. Lester had a bank account with the Mercantile National Bank of Miami Beach and the signatures of both Sigelbaum and Feuer for drawing checks were required. The address of Lester on the bank's records was in care of Southern Lighting Company. In 1942 the Army wanted the Hotel for the housing of troops. John C. Frazure, Project Manager of the Real Estate Department, South Atlantic Division of the Corps of Engineers, U.S. Army, negotiated with Steinhardt principally, and also with *269 Sigelbaum. The Hotel was appraised at $284,584 and the rent was fixed at $32,400 per year. In the summer of 1942 Lester was in default in payments on the second mortgage. The mortgage had been assigned to the Lehigh Valley Trust Company of Allentown, Pennsylvania. Steinhardt negotiated with the Trust Company toward accepting deferred payments. William H. Walker, Jr. is an attorney engaged in the practice of law in Miami. In August 1942 he was visiting in Connecticut. Steinhardt wrote Walker there under date of August 13, 1942: "Dear Bill, "I received a letter today from the Lehigh Valley Trust Company of Allentown, Pa., stating that they cannot go through the deal as we discussed it at the time I was there. Please bear in mind that at that time they did not give me a definite yes, but stated that they were of the opinion that their Board of Directors would approve the terms as they discussed them with me. "Said terms were, - instead of paying $14,000.00 plus interest on August 6, we were to pay the interest plus a payment of $5,000.00 on the principal. We were then to pay the balance of $9,000.00 in the following manner: "$5,000.00 on March 1, 1943 "$4,000.00 on March 1, 1944 *270 plus interest of course. They now state in their letter that they wrote you, which I had your secretary mail a copy of Medford Lake, N.J., that they cannot go through with that deal because of the fact that as yet we have not turned any money back to the lessee. However, we are practically completed with our dealings with the Army, and are waiting for Mr. Robinson to get here within the next day or two in order to turn the hotel over to the Army, and give him back part of his money. "Kindly see these people as soon as possible, and work out the best deal you can." Walker had a discussion with representatives of the Trust Company and received a letter dated September 11, 1942, from Butz, Steckel & Rupp, of Allentown, attorneys for the Trust Company, stating: "I have discussed with the officers of Lehigh Valley Trust Company the Steinhardt matters which were the subject of our conversation when you were here. I now have your letter of September 8th outlining a plan of installment payments on the note which was due August 6th. It appears from our conversation and also from your letter that Mr. Robinson is still continuing in the operation of the hotel under the terms of his lease *271 and that the rentals fixed thereunder are being paid to Steinhardt. When Mr. Steinhardt was here and asked for relief he advanced for a reason therefor the fact that the rentals which he would receive under the proposed lease with the Government would be $10,000.00 less and that, therefore, he would not have the same amount of funds from rentals available for payment of the notes. Since Mr. Steinhardt is still receiving the full rent provided for by the lease and apparently will continue to receive the same it is difficult for the officers of the Trust Company to perceive the reason for his request for relief in the payment of the note which was due August 6th. "As you know, the notes and the mortgage are held outright by Lehigh Valley Trust Company. The Trust Company, however, has certain notes and obligations of the Malones for which the Steinhardt mortgage and notes are held as collateral. Naturally any deferments in payment which the Trust Company might make would affect other obligations of the Malones held by the Trust Company. I have, therefore, called Mr. Martin Malone and I have discussed with him the contents of your letter of September 8th and also the matters which we *272 had talked about when you were here. Mr. Martin Malone is leaving for Florida today and I suggested to him that he call at your offices and talk the matter over with you. Since we do not wish to prejudice Mr. Malone nor the position of the Trust Company with respect to his obligations I told Mr. Malone that he should arrive at some arrangement with you and Mr. Steinhardt regarding the payments. I believe that any arrangements made among you with Mr. Malone will be satisfactory to the Trust Company. I am of the opinion that these arrangements should be completed before the end of this month. "If you should arrive at an Agreement with Mr. Malone regarding the manner of payments or the deferment thereof will you please forward the funds at once. When you or Mr. Steinhardt forward the funds will you please forward them in the form of a New York draft. * * * In March 1943 Sigelbaum and Steinhardt talked with Gaines concerning the rent being received. It appeared that the rent received from the Army was not enough to carry the mortgages and furniture contract. Gaines suggested that Lester sell the Hotel. Sigelbaum and Steinhardt asked Gaines if he would care to sell his interest. Gaines *273 agreed with them to sell his interest and the interest of his associates in Boston. He wrote the latter and procured their stock certificates to Sigelbaum and Steinhardt and received a check signed by Sigelbaum for $18,490. This represented repayment of an advance of $8,490 made to the corporation by Gaines and $10,000 to be divided with his associates as payment for the stock. Sigelbaum asked Gaines not to cash the check as he did not then have money to cover it. Lester then had less than $500 in the bank account. Gaines held the check until on or about June 1, 1943. On or about May 21, 1943, Steinhardt called at Walker's office to request him to draft a contract for sale of the Hotel to a prospective customer. On learning the proposed sale price Walker suggested that he and certain others for whom he was acting would be willing to buy the Hotel for that price and a commission could be saved. Steinhardt called Sigelbaum who joined him at Walker's office and an agreement was reached for sale of the Hotel by Lester to Walker's group. Sigelbaum, as president of Lester, executed a warranty deed of the Hotel to Kathryn C. Maule, Trustee, T. J. Blackwell and Harriet C. Blackwell, his *274 wife, and William H. Walker, Jr. and Zoella B. Walker, his wife. Walker drew up and signed a statement of the agreement addressed to Lester and reciting: "This will acknowledge receipt from you or Warranty Deed executed by Lester Holding Company, covering the Georgian Hotel, its furniture, furnishings and equipment. This deed is not to be placed of record until such time as you have been paid the sum of $51,500.00, less, however, the sum of $1500.00 necessary to settle the pending litigation over the name of the hotel, and charges for storing the furniture, furnishings and equipment of the hotel. "There shall be no prorations for taxes, insurance, rents or interest on existing mortgages; excepting, however, that all rental accruing under the existing Government lease will go to the purchaser and likewise credit for the rent prepaid by Mr. Robinson. "If this transaction is not consummated within fifteen (15) days from date, we will return the above mentioned deed to you." On the same date, Sigelbaum, as president, and Gaines, as secretary, executed on behalf of Lester a quitclaim deed of the same property to the same parties. The purpose of the second conveyance was to permit *275 Walker to record the quitclaim deed and retain the warranty deed bearing the proper revenue stamps without disclosing the purchase price of the Hotel. The quitclaim deed was recorded July 3, 1943; the warranty deed was recorded in 1946 when Walker and his associates sold the property. On May 25, 1943, Walker gave Sigelbaum and Steinhardt checks amounting to $19,000, payable to Lester. These checks were endorsed by Sigelbaum as president and on Walker's identification they were cashed at the First Federal Savings & Loan Association. On May 25, 1943, Lester's balance in its checking account was $5.84. On May 26, $18,500 was deposited to its account. As of May 26, 1943, Walker prepared a closing statement which he signed on behalf of the purchasers and which recited: "RE: Sale Georgian Hotel, Collins Ave.,
Miami Beach, Fla.
"SELLERS: Lester Holding Company
"PURCHASERS: Kathryn C. Maule,
Trustee, T. J. Blackwell and Harriet
Gray Blackwell, and W. H. Walker,
Jr. and Zoella B. Walker.
"TO -
"First mortgage
$113,434.53
"Interest 5/1/43 to 5/26/43
491.55
"Second mortgage
48,500.00
"Interest 9/30/42 to 5/26/43
1,665.54
"Furniture contract
10,912.34
"Interest to 5/26/43
146.04
"Past due storage ($412.50) and
drayage bill ($247.97) in ac-
count with Hannah B. Brom-
mer
660.47
"Due Hiram and Anna B. Rob-
inson as per agreement sus-
pending lease. ($208.33 per
month while property under
Army lease)
2,245.82
"Earl Curry, attorney, in set-
tlement of litigation over
name of hotel
1,500.00
"Balance of agreed cash pay-
ment, including $14,850 ac-
crued rent under govern-
ment lease 12/11/42 to
5/26/43 at $2700.00 per month
49,339.53
TOTAL
$228,893.82
*276 "Closing subject to purchasers' assuming all real and personal property taxes for the year 1943 and to receive credit for unearned insurance premiums. Title of purchasers subject to existing mortgages of record and conditional sales contract covering furniture in amount as shown above, and subject to existing lease held by the United States of America and existing lease held by Hiram and Anna B. Robinson, which lease has been suspended by memorandum agreement during, occupancy by the United States of America." On or about June 1, 1943, Sigelbaum took up the check he had given Gaines in March and gave him checks drawn on Lester's account in the amounts of $17,250 and $1,240. Gaines deposited these to his own credit at the Mercantile National Bank on June 1, and they were charged to Lester's account, leaving a balance of $15.84. On June 10, 1943, Walker issued checks to Lester in the amount of $12,500. These were endorsed by Sigelbaum as president and also individually. On June 11, a deposit of $12,500 was made to Lester's bank account. On July 8, 1943, Walker drew a check on his law firm's account in the amount of $3,500 payable to himself, cashed the check at The First Federal *277 Savings & Loan Association and delivered the cash to Sigelbaum and Steinhardt. He received a receipt signed for Lester by Sigelbaum. The full amount of $49,339.53 called for by the closing statement was paid by Walker on account of the purchasers by checks or cash delivered to Sigelbaum and Steinhardt. The bank account of Lester shows the following from February 19, 1943, to August 23, 1943, when it was closed: Service
Charges
1943 Date
or Checks
Deposits
Balance
Feb. 19
$ 411.84
Mar. 12
$ 400.00
11.84
Mar. 25
2.00
9.84
Apr. 17
2.00
7.84
May 13
2.00
5.84
May 26
$18,500.00
18,505.84
June 1
17,250.00
1,240.00
15.84
June 11
12,500.00
12,515.84
15
5,000.00
7,515.84
17
2.00
7,513.84
18
5,000.00
2,513.84
25
2,489.54
24.30
July 15
2.00
22.30
Aug. 23
10,022.30
10,000.00
0.00
The proceeds of the sale were used by Lester to pay various obligations including $10,000 advanced by Southern Lighting Supplies. Gaines was paid the amount agreed upon in March for the sale of his interest to Sigelbaum and Steinhardt. The balance remaining was divided between Sigelbaum and Steinhardt on August 23, 1943. Lester *278 was then liquidated. On July 26, 1944, Lester filed a corporation income and declared value excess profits tax return for the period January 1 to May 26, 1943. This was signed by Sigelbaum as president. It showed a net loss from operations and no tax due. The respondent determined that Lester had realized a gain and determined deficencies and delinquency penalties accordingly. There was no reasonable cause for the delinquency in filing the return. Lester was insolvent after August 23, 1943. The respondent has made efforts to effect collection of the taxes due from Lester, without success. The deficiencies as redetermined for the taxable period January 1 to May 26, 1943, are in corporation income tax $3,499.59 and penalty $874.90, and in declared value excess profits tax $1,759.80 and penalty of $439.95. The petitioner Gaines was not a transferee of assets of Lester and is not liable for the deficiencies. The petitioners Sigelbaum and Steinhardt each received assets in the liquidation of Lester in excess of the deficiencies in tax and penalties. The petitioners Sigelbaum and Steinhardt are transferees of assets of Lester and each is liable as a transferee for the deficiencies *279 in tax and penalties, plus interest. Opinion In these consolidated proceedings the respondent is seeking to establish the liability of the three petitioners as transferees of the assets of Lester Holding Company. The petitioner B. B. Sigelbaum concedes that he is a transferee, but originally contested the amount of the deficiency determined. The respondent conceded at the hearing that the amount of gain realized by Lester was overstated by $14,850, as contended by this petitioner. This resolves the only issue in the Sigelbaum proceeding and the deficiency therein will be recomputed under Rule 50. The other petitioners, Gaines and Steinhardt, deny liability as transferees, and the burden is upon the respondent to prove that they received distributions of assets of Lester. The petitioner Benjamin B. Gaines contends that he received no assets of Lester upon its liquidation. He says that in March 1943 he sold his interest and that of his associates to Sigelbaum and Steinhardt. He received a check from Sigelbaum for $18,490, representing reimbursement of $8,490 advanced by Gaines to Lester and $10,000 for his stock and that of his associates in Boston. He had no part in the negotiations *280 for the sale of the Hotel to Walker's group and did not know the price to be paid. He signed the deed as secretary of Lester at Sigelbaum's request and as formality. His signature was not necessary to the validity of the deed. The respondent contends that this was a step in the liquidation of Lester and points out that Gaines did not get the money until June when Lester sold the Hotel to Walker and his associates. We are convinced by the testimony of Walker, Sigelbaum, and Feuer that Gaines was not a stockholder or creditor of Lester after March 1943. He held a check or checks representing the personal obligation of Sigelbaum given for Gaines' stock. At Sigelbaum's request he did not deposit these checks. About June 1, 1943, Sigelbaum took up the checks and gave him checks of the Lester Holding Company which then had funds paid on account by Walker. Although the respondent contends that this was a step in the distribution of Lester's assets in liquidation, the liquidation being completed later, in August, when Sigelbaum and Steinhardt, having received the last payments from Walker of the agreed price for the Hotel, divided the last money in Lester's bank account, we do not agree. We *281 believe the payment on June 1 to Gaines, although out of Lester's bank account, represented payment by Sigelbaum and Steinhardt of the agreed price for Gaines' interest. The liquidation of Lester occurred later when the remaining proceeds of the sale were paid. The respondent erred in determining the deficiencies against Gaines. The petitioner Steinhardt contends that he was never a stockholder of Lester. He says he owned 11 per cent of the stock of Steinhardt Properties, Inc., 11 per cent was held by Sigelbaum, 11 per cent by Joseph Marcus, a cousin of Sigelbaum, 18 1/2 per cent by Gaines, 18 1/2 per cent by Bernice and Sadie Gaines, and 30 per cent by Gaines' associates in Boston. He asserts that when the Hotel was sold to Lester the proceeds were deposited in the Mercantile National Bank to the account of Steinhardt Properties, Inc., and that his interest in that corporation was liquidated and he received payment for his stock. His subsequent activity in the interests of Lester was due, he says, to the fact that he was to receive a broker's commission on rents collected or on effecting a sale of the property, and his efforts concerning settlement of the Malone mortgage were motivated *282 by the fact that he was personally liable thereon. He contends that there has been no proof in the case that he was ever a stockholder of Lester. Opposed to Steinhardt's contention we have the testimony of several other witnesses. Sigelbaum testified that he and Steinhardt had equal interests, both in Steinhardt Properties, Inc. and in Lester, that Sigelbam purchased the interest of Bernice and Sadie Gaines on behalf of Steinhardt and himself as equal owners, that he advanced the money for this, that in March 1943 he bought out Gaines' interest and that of his associates on behalf of Steinhardt and himself and that he and Steinhardt were thereafter the sole stockholders each with a one-half interest and that all proceeds of the sale, after payment of amounts owed others and advances repaid to Sigelbaum, were reduced to cash and divided equally between himself and Steinhardt. Feuer testified that he was secretary of both Steinhardt Properties, Inc. and Lester; that stock certificates were issued to all stockholders in both corporations; that certificates of stock in Lester were issued to Steinhardt; that the ownership of both corporations was the same except for the transfer of the *283 interest of Bernice and Sadie Gaines which was divided between Steinhardt and Sigelbaum equally. Gaines testified that Steinhardt was a stockholder in Lester; that all stockholders had certificates, although he admits that he did not see Steinhardt's certificate, and that when he sold his interest and that of his associates he procured the stock certificates representing those interests and delivered them to Sigelbaum in exchange for a check. In the correspondence between Steinhardt and Walker and the Lehigh Valley Trust Company, Steinhardt refers to "we" in discussing the payments due by Lester and the Allentown attorneys refer to Steinhardt as receiving rent and to "his request for relief" in payments on the note. Robinson, lessee of the Hotel, testified that he dealt with Steinhardt on matters concerning the Hotel and understood that Steinhardt was one of the stockholders. The stock records of Lester have been lost and the sole evidence of ownership of the corporation is in the testimony of witnesses who were in a position to know. We have found as a fact that Steinhardt was a stockholder and that he received assets of Lester upon its dissolution. We sustain the action of the *284 respondent in determining the deficiencies against him. The amounts are to be recomputed in view of the respondent's concession as to the amount of gain realized. Decision will be entered for the petitioner in Docket No. 25371. Decisions will be entered under Rule 50 in Docket Nos. 25400 and 25441.